IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Robert LeVan**, an individual, **Baseballracks.com, Inc.**, an Illinois corporation,<br><br>*Plaintiffs*,<br><br>vs.<br><br>**David S. Payton**, an individual, **PYT Sports, Inc.**, an Illinois corporation,<br><br>*Defendants*. | Case No. |

### VERIFIED COMPLAINT

**NOW COME** the Plaintiffs, Robert LeVan ("Robert") and Baseballracks.com, Inc. ("Baseball Racks") by and through their attorneys, Fuchs & Roselli, Ltd., and, as for their *Verified Complaint* ("Complaint") against the Defendants, David Payton ("David" or "Payton") and PYT Sports, Inc. ("PYT"), state as follows:

### Parties

1. Robert is a citizen of Indiana who resides at 2720 Forest Park Drive, Dyer, Indiana 46311.

2. Baseballracks.com, Inc. ("Baseball Racks") is an Illinois "C" corporation which was incorporated by the Plaintiff and Defendant on or about February 10, 2011. On September 1, 2017, Plaintiff agreed to purchase Baseball Racks from Defendant pursuant to a certain *Asset Purchase Agreement, Settlement and Release* ("Purchase Agreement"). *See* Purchase Agreement, a true and accurate copy of which is attached hereto as **Exhibit A**.

3. Baseball Racks manufactures and directly sells a wide variety of sporting equipment and supplies (principally for baseball), including but not limited to benches, bat racks, helmet racks, and combination bat/helmet racks.

4. Payton is an individual who resides at 2908 W. 99th Place, Evergreen Park, Cook County, Illinois 60805.

5. PYT is an Illinois corporation doing business within Illinois. Upon information and belief, Payton is the President and sole owner of PYT.

## Jurisdiction & Venue

6. This is an action for copyright infringement arising under copyright laws of the United States. Plaintiffs are also pursuing pendent state law claims for breach of contract and an accounting action in connection with Defendants' various actions in violation of the Purchase Agreement.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 United States Code §§ 1331 (federal question) and 1367 (conferring supplemental jurisdiction over related claims).

8. Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S.C. §§ 1400(a) because Defendants conduct substantial business within the state of Illinois; Defendants infringed Plaintiffs' copyrights within the state of Illinois; and a substantial part of the events or omissions and alleged misconduct giving rise to Plaintiffs' claims occurred in the state of Illinois.

## Factual Allegations Common to All Counts

9. On or about January 10, 2011, Robert and David entered into a written

partnership agreement which memorialized their agreement to become 50/50 partners in Baseball Racks and to formally incorporate Baseball Racks.

10. Pursuant to their partnership agreement, Robert and David were each 50% owners of Baseball Racks with equal authority and voting rights[1].

11. However, after several disputes between Robert and Payton regarding the direction of Baseball Racks, based largely upon their varying levels of ambition (i.e. that Payton was complacent and did not want to expand), Robert sought to buyout Payton's interest in Baseball Racks in late 2016 so that he could improve and expand the business.

12. Unfortunately, rather than entertaining Robert's reasonable buyout offer, Defendant fabricated a basis to "fire" his equal co-partner.

13. Shortly after this wrongful termination, Robert filed a lawsuit on January 17, 2017 in the Circuit Court of Cook County, under case number, 2017-CH-659, which sought various relief based upon Payton's wrongful conduct.

14. After several months of litigation, the parties reached a resolution and settled this earlier lawsuit pursuant to the above-defined Purchase Agreement, which was executed on September 1, 2017. *See* <u>Exhibit A</u>.

15. Pursuant to the terms of this Purchase Agreement, Robert agreed to purchase all of Payton's shares in Baseball Racks such that Robert owned any and all of Baseball Racks' assets, including but not limited to its inventory, intellectual property, website, product designs, goodwill, manufacturing and production

---

[1] There were no separate classes of stock such that one could be "voting" and one could be "non-voting."

equipment. *See id.* at pp. 1, 3.

16. As noted above, the Purchase Agreement expressly contemplated that Robert and Baseball Racks alone would own the products manufactured by Baseball Racks:

> **5.** **LEVAN SHALL SOLELY OWN BASEBALLRACKS**. Upon the completion of the payment by LeVan, in consideration of such payment, Payton shall sell and assign to LeVan and LeVan shall become the sole owner of: (a) all of the issued and outstanding shares of Baseballracks, and (b) its manufacturing business, which includes any product currently manufactured by Baseballracks, including but not limited to the manufacture of benches, bat racks, helmet racks, and combination bat/helmet racks…

*See id.* at p. 3, ¶5.

17. In addition to agreeing to sell all of his shares in Baseball Racks, Payton also agreed to not compete with Baseball Racks in the woodworking/manufacturing business and, moreover, not to solicit any of these customers for a period of six months from the execution of the Purchase Agreement. *See id.* at pp. 7–8, ¶¶11–12.

**Count I**
*Copyright Infringement*
**(Baseball Racks against Defendants)**

18. Baseball Racks hereby incorporates by reference the above paragraphs 1–17 as if set forth herein for this paragraph 18.

19. Baseball Racks is and has always been the owner of all product photos (the "Photos") taken of its products, whether contained on its website or not, and has, at all relevant times, retained sole rights to the Photos' use.

20. A representative selection of these Photos have either been registered with the United States Copyright Office or complete applications for copyright

registration have been received by the Copyright Office in compliance with the Copyright Act, 17 U.S.C. §§ 101 et seq.

21. Notwithstanding the foregoing, Payton's new venture, PYT, has been using Baseball Racks' Photos without permission to sell *identical* products to those manufactured and sold by Baseball Racks.

22. In addition to PYT using Baseball Racks' Photos to sell identical products, Defendants have also been using Baseball Racks' Photos to sell other (non-manufactured) products not currently sold by Baseball Racks.

23. Since the change in ownership, customers of Baseball Racks have expressed significant confusion as to why PYT is using the very same photos that exist on Baseball Racks' website.

24. Based upon Defendants' unauthorized use of the Photos, Baseball Racks has lost business to Defendants.

25. Defendants' unauthorized use of the Photos has been willful and has continued despite Baseball Racks' written demand that Defendants cease using Baseball Racks' Photos.

26. Baseball Racks has suffered damages as a result of Defendants' unauthorized and willful use of the Photos.

**WHEREFORE**, Baseball Racks respectfully requests that this Honorable Court enter an order providing the following relief:

A. Judgment in Baseball Racks' favor and against Defendants;

B. Defendants' payment of Baseball Racks' actual damages;

    C.    An award of Baseball Racks' costs and fees for attorneys, accountants, and experts in connection with this cause of action;

    D.    Disgorgement of all profits Defendants have earned through their unauthorized use of Baseball Racks' copyrighted Photos;

    E.    Statutory damages of at least $150,000.00 for Defendants' willful infringement of Baseball Racks' copyrighted Photos, pursuant to 11 U.S.C. 504(a);

    F.    An award of punitive damages to Baseball Racks in an amount to be determined; and,

    G.    Such other and further relief as this Honorable Court deems just and proper.

## Count II
### *Breach of Contract*
**(Robert against Payton)**

27.    Robert hereby incorporates by reference the above paragraphs 1–17 as if set forth herein for this paragraph 27.

28.    Notwithstanding the clear terms of the Purchase Agreement and that it is a valid and enforceable contract, Payton has breached its terms in numerous manners.

29.    Although Payton agreed to a 6 month non-compete and non-solicit as to Baseball Racks' manufacturing business (i.e. the helmet racks, bat racks, and similar wood-based manufactured items that were the hallmark of Baseball Racks), Payton was permitted to operate a sports brokerage business which sold items that Baseball

Racks had not itself manufactured.

30. At least as early as the date the Purchase Agreement was executed, Payton began operating his new venture, PYT, and created a website for his new company.

31. However, rather than creating his own website code and getting new photos for the products he was seeking to sell, Payton merely used the very same code and the very same photos owned by Baseball Racks to create the website for PYT.

32. Similar to any agreed sale of a business, the Purchase Agreement makes clear that Baseball Racks retained sole use of its website code and the product photos contained on its website. *See* Exhibit A at pp. 3–4, ¶5.

33. Nevertheless, since nearly the execution of the Purchase Agreement, PYT has engaged in the unauthorized use of Baseball Racks' intellectual property and photos of its products, in clear violation of the Purchase Agreement.

34. In addition to improperly using the website code and photos owned (and copyrighted) by Baseball Racks to sell PYT's products, Payton has, at least as early as February of 2018 (and before the six month non-compete/non-solicit expired) began soliciting Baseball Racks' customers and directly competing against Baseball Racks by selling the *exact* same products that Plaintiff had purchased through the Purchase Agreement.

35. Unbelievably, Payton did not even attempt to obfuscate the fact that he was and is selling the exact same products as Baseball Racks.

36. Rather, through Payton's new venture, PYT, he is selling the exact same

wood-based product line as Baseball Racks

37. In fact, until an earlier state law case was filed under case number 2018-CH-03272 on March 13, 2018 in regards to this very issue, Defendants had been using the same product names and the same SKUs as Baseball Racks.

38. As but one example (although PYT has unabashedly and unequivocally ripped Baseball Racks' entire product line), PYT is selling Baseball Racks' "Corsair Bench" with the exact same photo and a product description which was clearly taken from Baseball Racks' website, as shown below:

| PYT Website: | Baseball Racks' Website: |
|---|---|
|  |  |
| <ul><li>MLB style 2- tiered dugout benches with upper & lower level seating</li><li>Premium grade treated weather decking & framing for exposure to Rain, Snow & Humidity</li><li>Used in many **Major University Baseball & Softball** programs</li><li>**Standard bench length is 7ft 6 in - custom lengths available**</li><li>**34-3/8" height, 17-1/4" seat height, 15-1/4" seat depth, 30" bench depth**</li><li>Benches bolt together forming 1 continuous string</li></ul> | <ul><li>MLB style 2- tiered dugout benches with Upper & Lower level seating</li><li>In use in many **Major University Baseball & Softball** programs</li><li>**Standard bench length is 7 ft - custom lengths available**</li><li>**34 3/8" height, 17 1/4" seat height, 15 1/4" seat depth, 30" bench depth**</li><li>Benches bolt together forming 1 continuous string.</li><li>Available in any color Sherwin Williams can make</li></ul> |

8

| | |
|---|---|
| • Available in any color Sherwin Williams can make<br>• Team logos on side panels of bench string available at ***no additional cost***<br>• Seat & backrest are made with premium treated wood decking | • Team logos on side panels of bench string available (setup charges apply)<br>• Seat & backrest are made with premium treated wood decking<br>• We cannot ship to houses, need to ship to a school or a business |

*See* and *compare* Printouts from Baseball Racks' and PYT's respective websites, true and accurate copies of which are attached hereto as **Group Exhibit B** (emphasis in original).

39. Payton has made no secret of his intent and has even gone so far as to directly solicit several of Baseball Racks' customers and brag to them that he is selling the same products as Baseball Racks, but at a slightly cheaper price.

40. Even before Payton formally added Baseball Racks' product line to the PYT website (at the conclusion of the non-compete/non-solicit period), Payton had clearly been soliciting customers of Baseball Racks in violation of the Purchase Agreement. *See* Purchase Agreement, Exhibit A, at pp. 7–8, ¶11.

41. Despite the clear language of the Purchase Agreement, at least as early as February of 2018 (during the non-compete/non-solicit period), Payton or his agent(s) directly solicited Baseball Racks' customers and took orders from those customers to, upon information and belief, be fulfilled after the non-compete expired in March of 2018.

42. Consistent with the foregoing, Payton made several significant purchases of lumber and related products from vendors, at least as early as February of 2018 to begin fulfilling the orders that customers had placed with Payton's new

9

venture, PYT, in plain violation of the Purchase Agreement.

43. Payton's numerous actions in breach of the Purchase Agreement have caused significant confusion in the marketplace as vendors and customers of Baseball Racks have called Plaintiff to inquire who PYT is and why they are making the exact same products as Baseball Racks.

44. Importantly, Payton (in the absence of Robert's supervision and construction skills) has habitually manufactured substandard products. Thus, PYT's products (which were previously under the same name and SKUs), and which still use the same approximate dimensions and product photos will unequivocally cause damage to Plaintiff and Baseball Racks' business.

45. Although the above-referenced violations of the Purchase Agreement have necessitated this action, Payton has operated in contempt of the Purchase Agreement since its outset and has engaged in the following acts, each of which constitutes its own breach:

    a. Subsequent to the financial audit and prior to the date Robert took sole control of Baseball Racks, Payton, upon information and belief, purchased a significant amount of lumber using Baseball Racks' funds and then had the purchased materials delivered directly to Payton's chosen destination;

    b. Well after Defendant sold Plaintiff his shares in Baseball Racks, Defendant frequently used Baseball Racks' FedEx account to pay for personal shipments or shipments for PYT;

    c.     While he was in sole control of Baseball Racks, Payton had work performed at Baseball Racks' expense, but had the proceeds directed to his new venture, PYT;

    d.     Payton had work booked and quoted by Baseball Racks but took that work to his new venture PYT;

    e.     Upon information and belief, during the non-compete and non-solicit period, Payton used Baseball Racks' marketing funds and a related marketing contract to instead market for PYT (in violation of Payton's fiduciary duty to Baseball Racks);

46. In addition to the foregoing, while the non-compete in the Purchase Agreement still applied, Payton also committed mail fraud by illegally logging in to Baseball Racks' USPS account and cancelling the mail forwarding (to Plaintiff's address) which had been setup as a condition of the Purchase Agreement.

47. Through this illegal act, Baseball Racks' mail was improperly sent to Payton's mother's home (where Payton lives). Although Payton had no ownership interest in Baseball Racks, he repeatedly opened the mail and retained checks made out to Baseball Racks as well as other important documents, including but not limited to Baseball Racks' W2s.

48. By reason of the foregoing, it is abundantly clear that Payton has violated the Purchase Agreement and that Plaintiff has been damaged.

49. At all times relevant, Plaintiff has fully performed his obligations under the Purchase Agreement.

50. The Purchase Agreement provides for Robert's attorneys' fees and costs in pursuing this matter.

**WHEREFORE**, Robert respectfully requests that this Honorable Court enter an order providing the following relief:

A. Judgment in Robert's favor and against Payton for restitution and/or damages in an amount as established by the evidence, including without limitation, attorneys' fees incurred, and lost profits suffered;

B. Expedited discovery and an accounting from Payton;

C. An award of Robert's pre and post judgment interest at the highest rate allowed by law;

D. An award of Robert's costs and fees for attorneys, accountants, and experts;

E. Disgorgement of all profits Payton has earned in violation of the Purchase Agreement;

F. Issuance of a temporary restraining order and preliminary injunction requiring Payton to take down his website until all offending website code, photos, and Baseball Racks' intellectual property is removed;

G. An award of punitive damages to Robert in an amount to be determined; and,

H. Such other and further relief as this Honorable Court deems just and proper.

## Count III
### *Accounting*
### (Plaintiffs against Payton & PYT)

51. Plaintiffs hereby incorporate by reference the above paragraphs 1–17 and 28–50 as if set forth herein for this paragraph 51.

52. Based upon the acts of Payton and PYT outlined above, Plaintiffs have no adequate remedy at law for the entirety of the complained wrongs.

53. As detailed above, Payton has plainly violated the Purchase Agreement's non-compete and non-solicitation clauses.

54. As Plaintiffs have no ownership interest in PYT, they are unable to precisely determine when and what types of orders PYT has taken in violation of the Purchase Agreement.

55. An accounting is needed to ascertain the extent of damages and other possible bases of relief.

**WHEREFORE**, Plaintiffs, respectfully request that this Honorable Court enter judgment in their favor and against Defendants, Payton and PYT, as follows:

A. Requiring Payton and PYT to perform an accounting, from September 1, 2017 which sets forth all orders it has taken from clients, all solicitation of clients, and all communications with clients seeking manufacturing business of the type provided by Baseball Racks;

B. Awarding Plaintiffs their costs of pursuing this action; and,

C. Providing Plaintiffs with such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

**NOW COME** the Plaintiffs, by and through their attorneys, Fuchs & Roselli, Ltd., and demands trial by jury on all causes of action so triable.

Respectfully submitted,

**Robert LeVan** and
**Baseballracks.com, Inc.**,
*Plaintiffs*

By: /s/ David R. Buetow
     One of their Attorneys

David R. Buetow, #6228923
dbuetow@frltd.com
Scott A. Nehls, #6290318
snehls@frltd.com
**Fuchs & Roselli, Ltd.**
440 W. Randolph Street, Suite 500
Chicago, Illinois 60606
T: (312) 651-2400
F: (312) 651-2499

## **VERIFICATION BY CERTIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this *Verified Complaint* are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

**Baseball Racks**  **Robert LeVan**

By: _____  By: _____
     Robert LeVan, its President                        Robert LeVan